JOHN M. CUSHING and another *vs.* SEYMOUR, SABIN & Co.

March 13, 1883.

30  301
42  106
42  489

30  301
52  236
53  442

30  301
55  327

30  301
61  354

30    301
52LRA 53n

**Chattel Mortgage — Seizure by Mortgagee — Defective Foreclosure.—** Where personal property, seized by a mortgagee upon a chattel mortgage, is sold at a formal but abortive foreclosure sale to the mortgagee himself, who retains possession of the property, the sale does not affect the rights or liabilities of either party to the mortgage, whether the seizure be wrongful or not.

**Same — Conversion by Mortgagee — Damages — Conjectural Profits.—** This being an action for the wrongful conversion, by defendant, of a threshing-machine mortgaged to it by plaintiffs, *held*, that profits which the plaintiffs might have made from the performance of particular threshing contracts, if the defendant had not deprived them of the use of the machine, are too conjectural and uncertain to furnish a proper basis of damages for the conversion. *Goebel* v. *Hough*, 26 Minn. 252, distinguished.

**Same — Special Damages to be Pleaded.—** Where it appears that expenses to which one is put, and the loss of the benefit of expenses of which one is deprived, by the wrongful conversion of his property, are the proximate result of the conversion, such expenses may (if suitably pleaded) to some extent and in some circumstances properly form a basis for special damages. These damages must, however, be such as ordinarily and in the natural course of things might fairly be expected to result, and such as have in fact resulted, from the wrong complained of.

**Same — Amount Due on Mortgage to be Deducted from Damages.—** Where, in an action by a chattel mortgagor, the mortgagee is charged for the wrongful conversion of the mortgaged property, the latter is entitled to have so much of the mortgage debt as remains unpaid deducted from the whole amount of damages to which the former is otherwise entitled; and, for this purpose, evidence of the amount remaining unpaid may be given under a general denial.

Plaintiffs, the owners and mortgagors of the threshing-machine mentioned in the opinion, brought this action in the district court for Hennepin county to recover damages for the alleged conversion of the threshing-machine by defendant, the mortgagee. The action was tried before *Lochren, J.,* and a jury, who returned a verdict in which

they found specially for the plaintiffs (1) for the value of the machine at the time of the conversion, the sum of $350; (2) that plaintiffs, in August, 1880, in ignorance of the seizure and conversion by defendant, incurred expenses in going with men and teams to Moorhead to use the property during the threshing season of 1880, in the sum of $132, which expenses were not known to defendant when made; (3) that after plaintiffs learned of the seizure and conversion they necessarily incurred other expenses, amounting to $83, in returning from Moorhead; (4) that plaintiffs also lost $440 profits (without deducting the foregoing expenses) which they would have made in threshing grain under contracts made before knowledge of the conversion.

At the trial the defendant offered to prove that two of the mortgage notes, amounting to $300, were still unpaid, and asked the court to instruct the jury that the amount of those notes (which were not due at the time of the conversion) should be deducted from whatever sum the jury might award plaintiff as the value of the property. The evidence was rejected, and the request refused, the defendant excepting.

The defendant moved for a new trial, which was denied. On plaintiffs' motion, judgment was ordered and entered in their favor for the amounts in the three first findings only, the court holding them not entitled to recover the amount found for loss of profits. The defendant appeals from the order refusing a new trial, and both parties appeal from the judgment.

*Merrick & Merrick*, for plaintiffs.

The court below erred in not ordering judgment in favor of plaintiffs for profits lost by them by reason of defendant's conversion. It was a question for the jury. The loss was a natural and necessary result of the conversion and the damages were not too remote. *Chandler* v. *Allison*, 10 Mich. 460; *Jolly* v. *Single*, 16 Wis. 280; *Fultz* v. *Wycoff*, 25 Ind. 321; *Simmons* v. *Brown*, 5 R. I. 299; *Dubois* v. *Glaub*, 52 Pa. St. 238; *Hanover R. Co.* v. *Coyle*, 55 Pa. St. 396; *Shepard* v. *Milwaukee Gas Light Co.*, 15 Wis. 318.

The court properly ordered judgment in favor of plaintiffs on the second and third findings. *Davis* v. *Oswell*, 7 Carr. & Payne, 804; *Bodley* v. *Reynolds*, 8 Q. B. 779; *McDonald* v. *North*, 47 Barb. 530;

*Forsyth* v. *Wells*, 41 Pa. St. 291; Field on Damages, § 796; Sedgwick on Damages, 373.

Defendant was not entitled to set off the amount unpaid upon the mortgage against the damages for conversion. The authorities cited by counsel are in support of the proposition that the mortgagee or pledgee can offset the amount due when the mortgagee or pledgee is lawfully in possession. The rule does not apply, when, as in this case, the mortgagee is wrongfully and tortiously in possession. To reduce the mortgagor's recovery by the amount of the mortgage notes is to make him pay the mortgage debt before it is due. The mortgagee ought not to be allowed to gain this advantage by his wrongful act. *Brown* v. *Haynes*, 52 Me. 578; *Angier* v. *Taunton Paper Mfg. Co.*, 1 Gray, 621; *Edmondson* v. *Nuttall*, 17 C. B. (N. S.) 280; *Gillard* v. *Brittan*, 8 M. & W. 575; *Lowell* v. *Champion*, 6 Ad. & El. 407.

*Marsh, Searles & Nethaway*, for defendant.

BERRY, J.* Plaintiffs purchased of defendant (a corporation) a threshing-machine, belts, and fixtures, for $50 down, and their four notes for $500, in the aggregate, secured by a chattel mortgage of the purchased property. The mortgage contained the customary provisions for seizure and sale, upon default in paying the notes when due. It also provided that in case the mortgagee should at any time, having just cause therefor, "deem itself unsafe," it should be lawful for it to take possession of the mortgaged property and sell it, etc. The defendant seized the machine, and some of the belts and fixtures, and attempted to sell the same at foreclosure sale under the statute. For want of proper notice, however, the sale was invalid. But the purchase at the sale having been made by defendant itself, the possession of the property remains in it as at the time of the seizure. As it does not appear that the seizure or conversion were wanton or malicious, we have no occasion to consider the rules of law applicable to such cases.

1. Two only of the notes remained unpaid at the time of the seizure, but, as neither was due, the seizure was not justifiable on the ground of any default in paying the notes. It was, however, alleged

---

*Gilfillan, C. J., because of illness, took no part in this case.

in the answer, as a ground of seizure, that defendant deemed its debt insecure for reasons specified, and there was evidence in the case tending to show that these reasons existed, and that defendant did in fact deem its debt insecure on account thereof. The learned judge who tried the case below appears to have been of opinion that, as the foreclosure sale was invalid, the question whether the seizure was justified under the insecurity clause of the mortgage was immaterial. He seems to have been of the impression that, whether the seizure was rightful or not, the subsequent invalid foreclosure sale was a conversion. We do not agree to this. The foreclosure sale having been made to defendant itself, the possession of the property seized remained unchanged, and, the sale being a nullity, it did not affect the rights or liabilities of either party. *Fletcher* v. *Neudeck, ante,* p. 125. But, with reference to a future trial, we remark that if the defendant, for just cause, deeming its debt insecure, seized the mortgaged property, the taking and possession would be rightful by the terms of the mortgage, and defendant would not be liable to plaintiff therefor, notwithstanding the abortive foreclosure; and it follows, of course, that if the seizure was rightful, it would determine this action in defendant's favor.

2. But, assuming that defendant was guilty of a conversion of the mortgaged property, one question presented is whether plaintiffs are entitled to show and recover, as damages, the profits which they might have made from the use of the machine, (in performing certain threshing contracts which they had entered into,) if it had not been taken and detained by defendant. We agree with the learned judge below that anticipated profits of this character are too conjectural and uncertain to furnish a proper basis for estimating the compensation to which plaintiffs are entitled for the alleged wrong. This is reasonably apparent, we think, when it is considered that threshing is conducted in the open air and subject to contingencies of weather, breakages, delays, condition and quality of grain, and state of roads, and skill and energy in operating the machine, which make it impracticable definitely to ascertain what the profits of performing particular threshing contracts will be, in the absence of actual experiment in the particular instances. To enable loss of profits

to be shown on a question of damages, they should, for obvious considerations, be reasonably certain, otherwise any estimate of damages based upon them is conjecture. *Griffin* v. *Colver,* 16 N. Y. 489; *McDaniels* v. *Crabtree,* 21 Ark. 431; *Brock* v. *Gale,* 14 Fla. 523; *Sledge* v. *Reid,* 73 N. C. 440; *Vicksburg & M. R. Co.* v. *Ragsdale,* 46 Miss. 458. This case is not like *Goebel* v. *Hough,* 26 Minn. 252, which was one of a "regular and established business." See, also, *Chapman* v. *Kirby,* 49 Ill. 211.

3. The plaintiffs resided in Minneapolis, but, at the close of the threshing season of 1879, they left the machine at Moorhead, near which place they had been using it. The defendant's seizure was made in August, 1880. Plaintiffs, in ignorance thereof, took men and a team from Minneapolis to Moorhead, for the purpose of running the machine in the season of 1880. The learned judge below ruled that, as part of their damages for the conversion, they were entitled to recover the expense incurred by them in thus going to Moorhead with men and team, and also the expense necessarily incurred by them, after knowledge of the taking and alleged conversion, in returning with their men and team to Minneapolis. The testimony offered and received to show these expenses was objected to as incompetent under the complaint. The objection was well founded, for the damages recoverable on account of these expenses (if recoverable at all) were special, and should have been specially pleaded. Mayne on Damages, § 501, and notes. As they were not so pleaded, the testimony objected to should have been excluded, and its admission was error. To prevent misapprehension we observe that we have not overlooked the allegations of the complaint in regard to the plaintiff's expenditures, but it is clear that these allegations are made purely with reference to and as foundations for the claim of lost profits, of which we have before disposed. Where it can be shown that expenses to which a person is put, and the loss of the benefit of expenses of which he is deprived, by the wrongful conversion of his property, are the proximate result of the conversion, such expenses may, (if suitably pleaded,) to some extent, and in some circumstances, properly form a basis for special damages. Upon the subject, however, it is difficult, if not impracticable,

v.30—20

to indicate anything more than the very general and somewhat indefinite rule or principle that the special damages must be such as ordinarily and in the natural course of things might fairly be expected to result, and such as have in fact resulted, from the wrong complained of. 2 Addison on Torts, § 1384; Wood's Mayne on Damages, § 52. The particular application of this rule must be left to particular cases as they arise.

4. If, upon the facts of the case, it was to be charged for a wrongful conversion of the property seized, the defendant insisted upon its right to have the amount of the two unpaid notes held by it, and secured by the chattel mortgage, both of which had matured at the time of the trial, deducted from the whole amount of damages to which the plaintiffs should otherwise be found entitled. But the trial court was of opinion that the deduction was not allowable, and ruled accordingly. Though there is some conflict of opinion upon the subject, we think the ruling wrong, both upon the weight of authority and upon reason. When the assumed conversion occurred, the position of the parties was this: The plaintiffs had a cause of action against defendant for the conversion of property in which their (the plaintiffs') interest was a right of redemption, (*Fletcher* v. *Neudeck,* *supra,*) the value of which was the difference between the whole value of the property and the amount of the debt secured by the mortgage. The plaintiffs were also entitled to the possession and use of the property until default in payment of the debt or some part of it, or until defendant, deeming its debt insecure, for just cause, took possession of it on that account. But, as respects the value of the property, plaintiffs were entitled to recover such a sum as would equal the value of their interest in it, for this would be compensation, which is the purpose of damages; and as the value of their interest was the difference before spoken of, it follows that the defendant was entitled to deduct from the whole value of the property converted the amount of the two unpaid notes secured by the mortgage. This result secures compensation, prevents circuity of action, and is sanctioned by authority. *Brierly* v. *Kendall,* 17 Q. B. 937; *Johnson* v. *Stear,* 15 C. B. (N. S.) 330; *Brown* v. *Phillips,* 3 Bush, (Ky.) 656; *Russell* v. *Butterfield,* 21 Wend. 300; *Brink* v. *Freoff,* 40 Mich. 610, and 44 Mich. 69; *Ball*

v. *Liney,* 48 N. Y. 6; *Fowler* v. *Gilman,* 13 Met. 267; *Chamberlin* v. *Shaw,* 18 Pick. 278; Field on Damagas, §§ 816, 822; Wood's Mayne on Damages, § 514. These authorities go upon the principle that where a plaintiff's title to or interest in a thing is partial, damages for its conversion by one holding the rest of the title or interest should, as respects the value of the thing, be partial also.

In this view the notes were admissible, without being specially pleaded, for that purpose, because, in connection with the mortgage, they went directly to disprove the allegation of the complaint as to the *quantum* of plaintiffs' interest in the property converted and their damages. The complaint alleged a general and unqualified ownership of the property by plaintiffs, and accordingly alleged and claimed damages for its full value. The mortgage, in connection with the notes, went to show that plaintiffs' right in the property (aside from the right of possession before spoken of) was a right of redemption, the value of which was the value of the property less the amount of the unpaid notes. Though the mortgage and notes are in a sense new matter, their evidentiary effect is not in support of a confession and avoidance, but they tend directly to disprove averments of the complaint which plaintiffs must prove in order to make out their alleged cause of action. They therefore support the general denial in defendant's answer, and are provable under it. Bliss on Code Pl. §§ 327, 328, 352, and notes; Pomeroy on Remedies, §§ 670, 673; *O'Brien* v. *McCann,* 58 N. Y. 373; *State* v. *Williams,* 48 Mo. 210.

5. Whether, as respects the value of the property converted, the verdict is sustained by the evidence, we need not inquire, as there is to be a new trial. It follows—*First,* that the order denying a new trial appealed from by defendant is reversed; *second,* that the judgment, as respects plaintiffs' appeal therefrom, is affirmed; *third,* that the judgment, as respects defendant's appeal therefrom, is reversed.