CASPER CARSTEN *vs.* NORTHERN PACIFIC RAILROAD COMPANY.

November 11, 1890.

**Railway—Round-Trip Ticket—Unused Part Held Transferable.**—A round-trip excursion ticket, used by the purchaser in going to the station named therein, and then sold and transferred, no restrictions appearing, is valid in the hands of the holder, and entitles him to a return passage, subject to the prescribed limitations as to time, etc.

**Same—General Damages Recoverable for Attempted Ejection from Car.**—And where a conductor of a train refuses to recognize such ticket in the hands of the holder, who is thereby entitled to ride thereon, and demands of him the regular fare, and attempts to eject him by force for non-payment thereof, the railway company is liable in damages for the

assault; and the jury, in assessing.the damages, may consider in connection therewith the annoyance, vexation, and indignity suffered by him.

**Same—Special Damages Held too Remote.**—In such an action, damages resulting from the loss of a job of work, occasioned by his delay at the station at which he was obliged to leave the train, *held* too remote to be considered.

Action brought in the district court for Crow Wing county, and tried before *Holland,* J., and a jury, who rendered a verdict of $225 for plaintiff. A motion for a new trial was heard by *Searle,* J., (owing to the illness of *Holland,* J.,) and was denied, and the defendant appealed.

*John C. Bullitt, Jr.,* and *Tilden R. Selmes,* for appellant.

*J. B. Douglas* and *J. N. True,* for respondent.

VANDERBURGH, J.   The defendant, in August, 1888, issued excursion passenger tickets from Detroit, in this state, "to Minneapolis and return," to be used within a time limited, but without restrictions as to transfer.   The plaintiff purchased one of these tickets at second-hand of a railway ticket broker, and, in conformity with the usage of the company, had it stamped by the defendant's agent at the depot in Minneapolis, and thereupon presented it to the baggageman, who punched it and checked his baggage, and within the time limited plaintiff took passage on a regular passenger train from Minneapolis to Detroit. While on the way, and before reaching Brainerd, an intermediate station, his ticket was examined by an agent of the company, who is styled a "ticket exchanger," and acted as an assistant to the regular conductor, and who notified the plaintiff that his ticket was not good, on the ground stated by him that it was bought at a "scalper's office." He, however, took up and retained the ticket, and refused to return it to the plaintiff. The regular conductor soon after came along and demanded plaintiff's fare, and, when informed of what had been done by the exchanger, also stated that the ticket was not good, and notified him that he would have to leave the train unless he paid his fare, and soon after came back, accompanied by two brakemen, as the train was approaching a station, for the purpose, as the evidence tends to show, of ejecting plaintiff from the train.   They took him by the shoulder and led him to the door in presence of the passengers, when

a stranger paid his fare to Brainerd, at which place the plaintiff voluntarily left the train. Plaintiff acted under compulsion when leaving his seat when ordered, but made no resistance, and there was in fact no violence or vindictive or abusive language used.

1. The evidence is sufficient to show that the ticket was genuine and was good for one passage from Minneapolis to Detroit as a return ticket, and that it was wrongfully taken away from plaintiff and appropriated by the agent of the defendant. The ticket was transferable in the absence of any restrictions in the original contract of sale, and was valid in plaintiff's hands. The conductor was fully advised of the facts in the case, which he could verify by reference to his assistant on the same train. His conduct in requiring the plaintiff to leave the train was therefore wrongful. *Burnham* v. *Grand Trunk Ry. Co.*, 63 Me. 298.

2. It is an action sounding in tort, and we think the plaintiff entitled to claim damages for the wrong and injury done him, in addition to the price of the ticket, though no particular loss or special injury to his person was shown. The evidence tended to prove that the agents of the defendant laid hands on him, and were proceeding to eject him by force, if necessary, from the car, which was full of passengers. The fact that he escaped personal violence by non-resistance does not deprive him of his right of action; and the jury were entitled to consider, in connection with the physical acts of the conductor in wrongfully attempting to eject him, the annoyance, vexation, and mortification suffered by him, and the indignity put upon him. *Chicago & Alton R. Co.* v. *Flagg*, 43 Ill. 364, (92 Am. Dec. 133;) 3 Suth. Dam. 712, 715; 2 Beach, Ry. Law, § 891. But the jury must be governed by the evidence, and the damages assessed must be appropriate to the nature of the case, which will be modified by the circumstances, such as the presence or absence of personal malice, actual violence, and threatening or insulting language. *Chicago, B. & Q. R. Co.* v. *Parks*, 18 Ill. 560, (68 Am. Dec. 562, 573.) The instruction given by the court to the jury, that if the conductor took up the ticket, and failed to give any excuse for his refusal to return the same to plaintiff, and no excuse existed, they might presume that he acted malevolently, and with a tyrannical and

oppressive motive, and might award him "any amount of damages that is proper, not exceeding the sum of $1,000," was, we think, in view of the evidence in the case, erroneous, and likely to mislead the jury as to the extent of their discretion on the question of damages.

3. The plaintiff was permitted, against the objection of the defendant, to prove that, by reason of his delay at Brainerd, he lost a job of threshing at Detroit, for which he expected $2.25 per day. He testified that he was detained there for a week for want of money to go any farther, and this alleged loss the jury were allowed to consider. This was error. Such damages are too remote. They cannot be considered the proximate result of the alleged wrongful act of the conductor. There must have been several other independent causes to which the same result might have been referred. *Brown* v. *Cummings*, 7 Allen, 507.

Order reversed.